UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel J. McClenahan, and
Rachel M. McClenahan,

          Plaintiffs,

v.

Equifax Information Services LLC,
CBCInnovis, Inc., and
Green Tree Servicing LLC,

          Defendants.

Civil No. 14-507 (DWF/FLN)

**MEMORANDUM**
**OPINION AND ORDER**

_____

John H. Goolsby, Esq., Goolsby Law Office, LLC, counsel for Plaintiffs.

Matthew R. Brodin, Esq., Briggs & Morgan, PA, counsel for Defendant Green Tree Servicing LLC.

_____

**INTRODUCTION**

      Plaintiffs Daniel J. McClenahan ("Mr. McClenahan") and Rachel M. McClenahan ("Ms. McClenahan") (together, the "McClenahans") filed this lawsuit after Defendant Green Tree Servicing LLC ("Green Tree") incorrectly reported an outstanding balance on Mr. McClenahan's second mortgage loan account. According to the McClenahans, Green Tree's incorrect reporting violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. This matter is now before the Court on Green Tree's Motion for Summary Judgment (Doc. No. 30). Because the Court finds that

Green Tree is not a "debt collector" under the FDCPA, the Court grants Green Tree's motion.

## BACKGROUND

### I.     The McClenahans' Mortgage and Bankruptcy

The parties largely agree on the facts surrounding the mortgage loan and bankruptcy at issue in this case. On May 30, 2007, the McClenahans entered into a second mortgage loan agreement with Countrywide Home Loans ("Countrywide") in connection with their purchase of a home in Somerset, Wisconsin. (Doc. No. 34 ("Hajost Aff.") ¶¶ 2-3, Exs. 1-2.) Mr. McClenahan executed the promissory note for the loan (the "Note"), and both Mr. and Ms. McClenahan executed the mortgage agreement that secured the loan. (*Id.*) Under the terms of the Note, Mr. McClenahan agreed to make payments of $251.13 on the first of each month and to pay a 5% late charge ($12.56) if the holder of the Note did not receive a payment within fifteen days of the due date. (*Id.* ¶ 2, Ex. 1 at §§ 3, 4(A).) Mr. McClenahan also agreed to a specific definition of the term "default":

> **(B) Default**
> If an amount greater than one full monthly payment is more than 10 days overdue, or if the first or last payment is more than 40 days overdue, I will be in default.
> Even if, at a time when I am in default the Note Holder does not require me to pay in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

(*Id.* at § 4(B).) And, Mr. McClenahan agreed to an acceleration clause:

> **(C) Notice from Note Holder**
> If I am in default, the Note Holder may send me a written notice telling me that I must pay the overdue amount, including any late charges,

2

> by a certain date. That date must be at least 15 days after the notice is
> mailed to me or, if it is not mailed, 15 days after the date on which it is
> delivered to me. If I do not cure the default, the Note Holder will have the
> rights which the law allows, including the right to require me to pay
> immediately the full amount of principal which has not been paid and all
> the interest that I owe on that amount.

(*Id.* at § 4(C).)

On February 21, 2011, the McClenahans jointly filed for bankruptcy under chapter 7 of the Bankruptcy Code. (Doc. No. 33 ("Brodin Aff.") ¶ 3, Ex. B.) Shortly thereafter, on February 28, 2011, Green Tree acquired the servicing rights for Mr. McClenahan's second mortgage loan. (Hajost Aff. ¶¶ 4-5, Exs. 3-4.) On June 2, 2011, Mr. McClenahan's personal obligations on the second mortgage loan, as provided by the Note, were discharged through the bankruptcy proceeding. (Doc. No. 1 ("Compl.") ¶ 10.) On May 9, 2012, Green Tree reported to the credit reporting agencies that Mr. McClenahan's second mortgage loan had been charged off due to the bankruptcy discharge, and on January 31, 2013, Green Tree reported that the account had been deleted. (Hajost Aff. ¶ 9, Ex. 8.)

## II.   Green Tree's Incorrect Reporting

The parties also agree, for the most part, on the facts regarding Green Tree's incorrect reporting. On April 30, 2013, Green Tree incorrectly reported to the credit bureaus that Mr. McClenahan's second mortgage loan account was open and subject to collection. (*Id.*) By May 10, 2013, Green Tree had internally corrected the error to indicate that Mr. McClenahan's personal obligations on the second mortgage loan had been discharged. (*Id.*) However, on June 10, 2013, the incorrect information reported by

Green Tree appeared on a join credit report for the McClenahans.  (Doc. No. 40 ("R. McClenahan Aff.") ¶ 2, Ex. A.)  In July 2013, the McClenahans could not complete the purchase of a home, because their joint mortgage application was denied.  (*Id.* ¶ 4.)  On September 23 and 24, 2013, Mr. McClenahan called Green Tree to discuss Green Tree's incorrect reporting.  (Doc. No. 39 ("Goolsby Aff.") ¶ 2, Ex. A.)  Finally, on October 14, 2013, Green Tree submitted a credit bureau report correction request to the credit bureaus.  (Hajost Aff. ¶ 9, Ex. 8.)

**III.    The Status of Mr. McClenahan's Account When Green Tree Became Servicer**

Despite the parties' agreement regarding the foregoing facts, the parties do not agree on the status of Mr. McClenahan's second mortgage loan account at the time that Green Tree began servicing the account.  Green Tree's factual account relies on Green Tree's business records, including the payment history prior to the transfer to Green Tree (*id.* ¶ 10, Ex. 9) and a letter dated June 9, 2011 (*id.* ¶ 6, Ex. 5).  The payment history shows that on January 24, 2011, Mr. McClenahan made a payment of $263.69, which covered a monthly payment of $251.13 and a late charge of $12.56, thereby bringing the account current.  (*Id.* ¶ 10, Ex. 9.)  It also shows that on February 25, 2011, Mr. McClenahan made a payment of $263.69; this time, $251.13 covered a monthly payment, and $12.56 was designated as "unapplied."  (*Id.*)  In the June 9, 2011 letter, Green Tree advised Mr. McClenahan that he had defaulted on his second mortgage loan by failing to make monthly payments due March 1, 2011 through June 1, 2011.  (*Id.* ¶ 6, Ex. 5.)  In light of these records, Green Tree contends that Mr. McClenahan's account had a positive balance of $12.56 on February 28, 2011, the date when Green Tree

acquired the servicing rights to the second mortgage loan.  (Doc. No. 32 ("Def.'s Mem.") at 7-9.)

The McClenahans' version of the facts relies on the McClenahans' verified response to an interrogatory served by Green Tree.  (Goolsby Aff. ¶ 2, Ex. A.)  The McClenahans claim that on January 11, 2011, Mr. McClenahan owed $263.69, which included a monthly payment of $251.13 due January 1, 2011, and a late charge of $12.56 incurred in December 2010.[1]  (*Id.*)  Because that amount was more than ten days overdue, the McClenahans assert that the second mortgage loan was in default.  (*Id.*)  According to the McClenahans, Mr. McClenahan failed to pay the full overdue amount— including late charges—after the January 11, 2011 default, and at the time that Green Tree acquired the servicing rights, the account had a negative balance of $12.56.[2]  (*Id.*; Doc. No. 38 ("Pls.' Opp'n") at 5.)

**IV.   This Lawsuit**

On February 24, 2014, the McClenahans initiated this lawsuit against Green Tree and two credit reporting agencies—Equifax Information Services, LLC ("Equifax") and CBCInnovis, Inc. ("CBCInnovis").  (Compl.)  The Complaint alleges that Green Tree

---

[1]   Green Tree's business records show that Mr. McClenahan made a monthly payment on December 16, 2010; they do not show that he incurred a late charge.  (Hajost Aff. ¶ 10, Ex. 9.)

[2]   Green Tree's business records do not show that Mr. McClenahan owed $12.56 on February 28, 2011.  (*Id.*)  Further, the Court notes that the McClenahans' interrogatory response—unsupported by documentary evidence—may not be sufficient to create a genuine issue of material fact as to the balance of Mr. McClenahan's second mortgage loan account at the time that Green Tree acquired the servicing rights.  The Court, however, need not reach this issue, as it decides this case on other grounds.

violated multiple subsections of § 1692e of the FDCPA, which prohibits debt collectors from using false representations to collect a debt. (*Id.* ¶¶ 42-45.) After filing the Complaint, the McClenahans agreed to dismiss their claims against Equifax and CBCInnovis. (Doc. Nos. 18, 19, 28, 29.) The Court now considers Green Tree's Motion for Summary Judgment (Doc. No. 30).

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

6

## II.     Alleged FDCPA Violations

The McClenahans claim that Green Tree violated various subsections of § 1692e of the FDCPA. Section 1692e states, in part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It then provides sixteen types of conduct that constitute a violation of that section. *Id.* Section 1692a provides the FDCPA's definition of a "debt collector" subject to § 1692e's prohibitions. 15 U.S.C. § 1692a(6). Subject to several exceptions, a debt collector is a person who is in the business of collecting debts or who regularly collects debts:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* One of the exceptions is for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . *concerns a debt which was not in default at the time it was obtained by such person*." 15 U.S.C. § 1692a(6)(F) (emphasis added). In light of this exception, courts have repeatedly recognized that a person who obtained the debt at issue *when the debt was not in default* cannot be liable as a debt collector under the FDCPA. *Marshall v. Deutsche Bank Nat'l Trust Co.*, 445 F. App'x 900, 901 (8th Cir. 2011) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *Cohen v. Mortg. Elec. Registration Sys., Inc.*, Civ. No. 08-1394, 2009 WL 4578308, at *2 (D. Minn. Dec. 1, 2009); *Motley v.*

*Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008). In this case, the question of whether Green Tree is a debt collector is dispositive.

### A. The Note's Definition of Default

To determine whether Green Tree is a debt collector under the FDCPA, the Court considers whether Mr. McClenahan's second mortgage loan was in default at the time that Green Tree acquired the servicing rights to the loan. The parties agree that the Note defines "default" for purposes of this analysis.

Under Minnesota law, a court interpreting a contract (such as the Note) must attempt to determine the intent of the parties from the language of the contract in light of all of the contract's terms. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 793 (8th Cir. 2014); *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 916 (8th Cir. 2013). If the court determines that the contract language is unambiguous—meaning it has only one reasonable interpretation—it will give effect to that language. *Seagate Tech., LLC v. W. Dig. Corp.*, 854 N.W.2d 750, 761 (Minn. 2014). When a contract's language is unambiguous, the contract's construction and effect are questions of law. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 877 (8th Cir. 2010) (applying Minnesota law).

The Note provides that Mr. McClenahan is in default "[i]f an amount greater than one full monthly payment is more than 10 days overdue." The language of this provision is unambiguous. As a matter of law, the Court concludes that "default" means that: (1) Mr. McClenahan owes an amount greater than $251.13; and (2) more than ten days have passed since that amount was due.

8

### B.  Whether Mr. McClenahan Was in Default When Green Tree Acquired the Servicing Rights to His Second Mortgage Loan

In light of the Note's definition of "default," the Court finds that Mr. McClenahan was not in default when Green Tree began servicing his second mortgage loan. On February 28, 2011, Green Tree acquired the servicing rights to Mr. McClenahan's second mortgage loan. On that day, taking the McClenahans' version of the facts as true, Mr. McClenahan owed $12.56, and that amount was more than ten days overdue. Applying the Note's definition of "default," the loan was not in default because Mr. McClenahan did not owe an amount greater than $251.13. Because the loan was not in default when Green Tree acquired the servicing rights, Green Tree is not a debt collector under the FDCPA.

Notwithstanding the Note's unambiguous definition of "default," the McClenahans argue that Mr. McClenahan was in default on February 28, 2011, because Mr. McClenahan defaulted on January 11, 2011, and never paid off the entire amount due. The McClenahans rely on the Note's acceleration clause, which provides in part:

> If I am in default, the Note Holder may send me a written notice telling me that I must pay the overdue amount, including any late charges, by a certain date. . . . If I do not cure the default, the Note Holder will have the rights which the law allows, including the right to require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

The McClenahans construe this language to mean that any default must be cured by paying the entire overdue amount, and they argue that Mr. McClenahan never cured his January 11, 2011 default. Thus, even though Mr. McClenahan owed only $12.56 on

February 28, 2011, the McClenahans contend that Mr. McClenahan was in default on that date because he failed to pay off the balance in full after the January 11, 2011 default.

The McClenahans' argument is unpersuasive. The Court finds that the language of the Note's acceleration clause is unambiguous. It indicates that the parties intended to allow the Note Holder to require Mr. McClenahan to immediately pay off the second mortgage loan if three conditions are met: (1) Mr. McClenahan defaults; (2) the Note Holder provides written notice; and (3) Mr. McClenahan fails to cure the default by paying the entire overdue amount. If, however, Mr. McClenahan defaults and the Note Holder does *not* provide written notice, then Mr. McClenahan has no obligation to cure the default by paying the entire overdue amount. Whether the account is in default turns on the Note's definition of default—whether "an amount greater than one full monthly payment is more than 10 days overdue"—not the Note's acceleration clause.

Here, taking the McClenahans' version of the facts as true, there is no evidence that Mr. McClenahan received a written notice requiring him to pay the entire overdue amount prior to February 28, 2011.[3] Accordingly, Mr. McClenahan had no obligation to pay the entire overdue amount after his January 11, 2011 default. Because the overdue amount on February 28, 2011, was only $12.56, Mr. McClenahan was not in default on

---

[3]   Mr. McClenahan did receive such notice on or about June 9, 2011, based on failure to make monthly payments from March 1, 2011 through June 1, 2011.

that date. Accordingly, Green Tree is not a debt collector and is not liable under § 1692e of the FDCPA. Summary judgment in favor of Green Tree is appropriate.[4]

### III.   Dismissal With or Without Prejudice

Finally, the McClenahans argue that if the Court grants Green Tree's motion for summary judgment, it should dismiss the lawsuit without prejudice and thereby allow the McClenahans to file a bankruptcy court action alleging that Green Tree's incorrect reporting violated the discharge injunction issued by the bankruptcy court. The McClenahans cite no caselaw in support of their position that a district court may decide a plaintiff's claim on the merits and still dismiss the claim without prejudice for the purpose of allowing the plaintiff to file an additional claim, based on the same facts, in bankruptcy court. To the contrary, caselaw located by the Court asserts that "a district court has no discretion to grant summary judgment without prejudice." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194-95 (5th Cir. 2011); *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987); *Dredge Corp. v. Penny*, 338 F.2d 456, 464 (9th Cir. 1964). Accordingly, the Court concludes that the McClenahans' Complaint is properly dismissed with prejudice.

---

[4]   Because the Court finds that Green Tree is not a debt collector and is therefore not subject to the FDCPA, it does not reach additional arguments raised by the parties, including: (1) whether Green Tree's conduct constitutes a misleading representation in connection with the collection of a debt in violation of the FDCPA; and (2) whether Ms. McClenahan has standing to sue Green Tree under the FDCPA. In addition, although neither party raised the issue, the Court notes that courts are divided in their views on whether the Bankruptcy Code precludes FDCPA claims based upon alleged violations of bankruptcy stays. *See, e.g.*, *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504 (9th Cir. 2002) (finding preclusion); *Drnavich v. Cavalry Portfolio Serv., LLC*, Civ. No. 05-1022, 2005 WL 2406030 (D. Minn. Sept. 29, 2005) (finding no preclusion). Because the Court decides this case on other grounds, it does not reach this issue.

## CONCLUSION

Based on the Court's application of the unambiguous terms of the Note, Mr. McClenahan's second mortgage loan was not in default at the time that Green Tree acquired the servicing rights to it. As such, Green Tree is not a debt collector subject to the FDCPA, and the Court grants summary judgment in favor of Green Tree.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendant Green Tree Servicing LLC's Motion for Summary Judgment (Doc. No. [30]) is **GRANTED**.

2. Plaintiffs' Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINLY.**


Dated:  February 11, 2016             s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge